## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICKY LEE BUGG, JR., | : | Civil No. 1:18-CV-02399 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JUST WING IT, LLC, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is Plaintiff Ricky Lee Bugg, Jr.'s ("Bugg") motion for

default judgment pursuant to Federal Rule of Civil Procedure 55(b). (Doc. 8.) In

this public accommodation racial discrimination case, the owner of Defendant Just

Wing It, LLC ("Just Wing It") directed racial slurs at Bugg, causing both

immediate and longer term harm, including humiliation, embarrassment, and the

loss of Bugg's sense of acceptance and well-being. Following an evidentiary

hearing to determine damages, and for the reasons explained in this memorandum

opinion, the court grants Bugg's motion for default judgment, and enters default

judgment against Defendant Just Wing It, LLC, in the amount of $40,000.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Bugg filed a complaint on December 19, 2018, asserting that the owner of

Just Wing It, a restaurant in Annville, Pennsylvania, unlawfully discriminated

against him based on his race in an incident that occurred at the restaurant on

January 22, 2017, in violation of the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951–963 (Count I); 42 U.S.C. § 1981 (Count II); and 42 U.S.C. § 2000a (Count III).  (Doc. 1.)  In his amended complaint, Bugg requests that the court enter judgment against Just Wing It, and award Bugg injunctive and declaratory relief, compensatory and punitive damages, together with interest, attorney's fees, costs, and any other relief the court deems just and proper.  (Doc. 13, pp. 5–7.)[1]

In the amended complaint, Bugg avers that he is African American, and that he went to Just Wing It in Annville, Pennsylvania, on January 22, 2017, to get something to eat.  (Doc. 13, ¶¶ 7–8.)  Bugg contends that he placed an order for wings with Nikki Meyer ("Meyer"), who then went into the kitchen.  (*Id.* ¶¶ 9–10.) Minutes later, the founder and owner of Just Wing It, Christopher Behney ("Behney"), came out with cash in his hand and said to Bugg, "I own 3 restaurants and I don't need you niggas money," and then returned to the kitchen.  (*Id.* ¶¶ 9, 11.)  Meyer returned and told Bugg he must pay first before she provided him with his food order.  (*Id.* ¶ 12.)  Bugg contends that Just Wing It does not charge Caucasian customers prior to providing them with their food orders.  (*Id.* ¶ 13.) Behney then returned and began arguing with Bugg, at which point Bugg asked

---

[1] For ease of reference, the court will refer to the page numbering provided in the CM/ECF header.

Meyer for his money back so he could leave the restaurant. (*Id.* ¶¶ 16–17.) After Bugg's money was returned and while he was leaving, Behney stated "get out niggers, Trump's president now, I can say what I want." (*Id.* ¶ 18.) The police were called to the restaurant, and while Bugg was giving a statement to the police, Behney repeatedly gave Bugg the middle finger from inside the restaurant. (*Id.* ¶ 20.) As a result of Behney's racist behavior, Bugg was discriminated against and felt he had no choice but to request a refund and leave the restaurant without completing his transaction or obtaining food. (*Id.* ¶¶ 22–23.)

On January 8, 2019, Bugg filed a proof of service, indicating that Just Wing It was properly served with the summons and complaint on January 2, 2019, by a process server. (Doc. 4.) Because Just Wing It did not appear, file an answer, or otherwise defend or respond to the complaint, Bugg filed a request for entry of default. (Doc. 5.) The Clerk of Court entered an order of default against Just Wing It on March 14, 2019. (Doc. 6.)

Bugg subsequently filed a motion for entry of default judgment and a request for evidentiary hearing to determine damages pursuant to Federal Rule of Civil Procedure 55(b), along with a brief in support of the motion. (Docs. 8–9.) Because the damages in this case are not a "sum certain," Bugg requested an evidentiary hearing to assess damages. (Doc. 8, ¶¶ 13–18.) The motion and brief were subsequently served on Just Wing It. (Doc. 8, p. 6; Doc. 9, p. 6.)

The court entered an order scheduling an evidentiary hearing for January 24, 2020. (Doc. 10.) The evidentiary hearing was convened, and Just Wing It did not appear. Bugg, who was present with counsel, waived his right to a jury trial, and then presented evidence. In closing argument, Bugg's counsel asked the court to award compensatory and punitive damages, in addition to attorney's fees after the filing of an application. Because the complaint did not include a request for punitive damages, the court permitted Bugg to file an amended complaint to include a claim for punitive damages as well as supplemental authority on the amount of compensatory damages to be awarded. (Doc. 12.) In addition, the court directed Bugg to submit a transcript of the video deposition of the witness Jack Gunkel, because the video deposition that was played during the evidentiary hearing (in lieu of live testimony) was neither admitted to the record nor transcribed during the hearing. (Doc. 12.)

Bugg filed an amended complaint on January 27, 2020, including a request for punitive damages in Count II, which alleges a violation of 42 U.S.C. § 1981. (Doc. 13, p. 7.) Bugg also filed the deposition transcript of witness Jack Gunkel and a memorandum of law relating to damages. (Docs. 14–15.)

## JURISDICTION AND VENUE

The court has jurisdiction over Bugg's federal causes of action pursuant to 28 U.S.C. § 1331, and his state law claim pursuant to 28 U.S.C. § 1367. The

Middle District of Pennsylvania is the proper venue for this matter, because Just Wing It's principal place of business is located within this judicial district, and all the events giving rise to the claims occurred in this judicial district.

## STANDARD OF REVIEW

A clerk must enter default against a party when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). If a claim is not for a "sum certain," then the "party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b). The decision to enter a default judgment "is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). In considering the entry of a default judgment, the court must determine whether: (1) the plaintiff will be prejudiced if default is denied; (2) the defendant appears to have a litigable defense; and (3) the defendant's delay is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

Once a default judgment is entered against a defendant, the factual allegations in the complaint are treated as proven, except for the contentions relating to damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir.

1990) (quoting 10 C., Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2688 at 444 (2d ed. 1983)).  Although "[d]efaults are treated as admissions of the facts alleged, . . . a plaintiff may still be required to prove that he or she is entitled to the damages sought."  *Rainey v. Diamond State Port Corp.*, 354 F. App'x 722, 724 (3d Cir. 2009).

**DISCUSSION**

**A. Findings of Fact**

The court makes the following finding of fact following the evidentiary hearing on January 24, 2020.  At the hearing, Bugg testified and also presented the testimony of two witnesses to the events that occurred at Just Wing It on January 22, 2017.  Based on the testimony presented, the court makes the following findings of fact.  In January 2017, Bugg, who is African American, was a junior at Lebanon Valley College.  (Tr. at 9, 17.)[2]  He was a graduate of Hershey High School, and he played basketball on the school teams in high school and college.  (*Id*. at 10.)  Bugg was an active, well-respected member of the Lebanon Valley College community, and lived on campus for the first three years of college, but not his senior year.  (*Id*. at 9–11, 17.)  On January 21, 2017, Bugg's long-time friends from high school, Jack Gunkel ("Gunkel") and Dillon D'Amour

---

[2] The court reporter prepared an unofficial transcript of the January 24, 2020 evidentiary hearing at the court's request.

("D'Amour"), both of whom are Caucasian, came to visit and go to a party with Bugg.  (*Id*. at 11, 21; Doc. 14, pp. 6–7.)[3]  After attending the party, the friends decided to get some food at about 1:00 a.m. on January 22, 2017.  (Tr. at 11–12; Doc. 14, p. 6.)  Bugg and Gunkel arrived together at Just Wing It, which was very close to the college campus, while D'Amour stayed at the party a bit longer, joining his friends at Just Wing It shortly thereafter.  (Tr. at 11, 21; Doc. 14, pp. 7– 8.)

When Bugg and Gunkel arrived at Just Wing It, they sat at the bar and gave their order to a waitress.  (Tr. at 12; Doc. 14, p. 8.)  After ordering, the friends were "just watching ESPN on [their] phones, hanging out, talking."  (Tr. at 12.)  Bugg was a regular customer at Just Wing It because they had "wing nights" with inexpensive wings.  (*Id*. at 12.)  Bugg and Gunkel were planning to stay at Just Wing It to eat their food.  (*Id*. at 18.)  While Bugg and Gunkel were waiting for their food, a man came out of the back of the restaurant with a beer in one hand, and "a big stack of cash" in the other.  (*Id*. at 12; Doc. 14, pp. 8–9.)  The man said, "I own four restaurants, I don't need you niggas' money here."  (Tr. at 12; Doc. 14,

---

[3] Bugg's counsel took a video recorded deposition of witness Jack Gunkel on January 14, 2020, because he lives in Florida.  (Doc. 14.)  The video recording was played in court during the evidentiary hearing, and then the transcript of the deposition was filed after the hearing at the request of the court.  (*See* Doc. 14.)  The court will reference the deposition transcript for convenience, although the court notes that the video recording was viewed in court and the court therefore had the opportunity to observe the demeanor of Gunkel.

p. 9.)[4] Bugg and Gunkel were confused and uncomfortable because of the man's comments, and promptly asked the waitress for their money back. (Tr. at 12; Doc. 14, p. 9.) The waitress returned their money, and the friends were preparing to leave the restaurant. But then the man returned from the kitchen, and made more comments to the young men, including: "Trump is president now, I can say what I want" and "Get out niggers." (Tr. at 12-13; Doc. 14, pp. 9–10, 12.) Bugg and Gunkel both felt that the restaurant owner did not want to serve Bugg because of his race, and they also felt that the racial slurs were directed at Bugg. (Tr. at 13; Doc. 14, p. 13.) Gunkel did not think that there were any African American customers other than Bugg in the restaurant that night. (Doc. 14, p. 11.) Bugg and Gunkel changed their plans and decided to leave the restaurant solely because of the racist comments. (Tr. at 18; Doc. 14, p. 9.)

Bugg was very upset by these comments, causing him to flip a table and throw a plastic ketchup bottle, but neither object hit anyone. (Tr. at 13–14; Doc.

---

[4] There were some slight discrepancies between the testimony of Bugg and Gunkel. For example, Gunkel recalled the restaurant owner making a comment about President Trump during the first interaction, whereas Bugg recalled that comment being made in the second interaction. (Doc. 14, p. 9; Tr. at 12–13.) The court finds that these minor inconsistencies are understandable given that there are three years intervening between the incident and the testimony. Having observed the demeanor of the witnesses, the court finds the witnesses to be credible despite the minor inconsistences in their testimony. There were also some discrepancies between the testimony at the hearing and the allegations in the amended complaint. Most significantly, the witnesses did not testify to the different treatment of Bugg from Caucasian customers with respect to the waitress demanding payment prior to the food being served. However, the court presumes that Bugg's counsel chose to present testimony directed toward assessment of damages since the issue of liability was not in question at the time of the evidentiary hearing in this case.

14, p. 10.) The owner and Bugg and Gunkel yelled at each other. (Doc. 14, p. 13.) At this point, Bugg's other friend, D'Amour, arrived at Just Wing It, and the three friends left together. (Tr. At 13; Doc. 14, p. 14.) The friends went to a nearby house where another friend of Bugg lived, and found that a group of Bugg's friends were present (six or seven), all of whom were African American. (Tr. at 13; Doc. 14, p. 14.) After Bugg told the group of friends what happened, they went back to the restaurant together. (Tr. at 13.) Bugg explained that they returned to the restaurant to "show it wasn't just me, it was more than just me, it was the whole campus . . . and we just wanted to show that . . . it's not right to do anytime." (*Id.*)

When they arrived at Just Wing It, the police were present, and Bugg and Gunkel each gave a statement to the police. While Bugg was giving his statement, the restaurant owner was inside the restaurant, and he gave Bugg the middle finger. (Tr. at 14; Doc. 14, p. 17.)

Bugg was mad when Behney made the racist comments to him. He said, "I've never been that mad in my life. I don't usually get mad much. I'm pretty calm, for the most part. So I was just mad, just emotions. I didn't know what to do, but I just know I was mad, and I wasn't okay with it." (*Id*. at 15.) People in the Lebanon Valley College community learned about this incident, and Bugg said

that they were very supportive. (*Id*.) However, Bugg was greatly affected by this incident, as he stated:

> I noticed when I would go out anywhere, I would always be with my African-American teammates or friends rather than just anyone because I just didn't feel the same way after this incident happened. It was like it could almost just happen anywhere. . . . [O]bviously this can happen anywhere, so . . . you've got to just be, I guess, aware of your surroundings . . . . never to be too . . . laid back where you don't know what's going on and just be ready for it because you never know when it could happen.

(*Id*. at 16.) After the incident, Bugg spent more time with friends at home, and if he went out, he was never alone after this incident. (*Id*. at 16.) In addition, Bugg moved back home with his parents rather than living on campus for his senior year, and he did not want to be on campus as much. (*Id*. at 17.)

Gunkel testified that he has known Bugg for at least ten years, and Bugg is a "tough kid." (Doc. 14, p. 18.) Gunkel could tell that Bugg was very hurt by this incident, because he had tears in his eyes as they left the restaurant, and Gunkel had never seen that from Bugg before. (*Id*.) In addition, Gunkel spoke with Bugg and Bugg's father frequently after the incident, and Gunkel observed that they were "very upset and disappointed and angry." (*Id.*)

### B. Plaintiff is entitled to default judgment

In order to determine Bugg's entitlement to a default judgment, the court applies the *Chamberlain* factors. The first question is whether the plaintiff may be prejudiced if a default judgment is denied. *Chamberlain*, 210 F.3d at 164. Just

Wing It has been properly served with the complaint and the motion for entry of default judgment, and has not responded in any way in this proceeding. No counsel has entered an appearance, and Just Wing It did not appear at the evidentiary hearing in this matter. There has been a considerable passage of time since the incident at issue and the filing of the complaint, and any further delay could impair Bugg's ability to effectively pursue his claim. *See Macias v. White*, No. 15-3730, 2018 WL 347572, at *3 (E.D. Pa. Jan. 10, 2018); *Wilson v. Advanced Urgent Care, P.C.*, No. 4:16-CV-0214, 2017 WL 914260, at *4 (M.D. Pa. Mar. 8, 2017); *Carroll v. Stettler*, No. 10-2262, 2012 WL 3279213, at *2–3 (E.D. Pa. Aug. 10, 2012). Accordingly, it is clear that Bugg will be prejudiced if a default judgment is denied.

The second question is whether the defendant appears to have a meritorious defense. *Chamberlain*, 210 F.3d at 164. "A meritorious defense is one which, if established at trial, would completely bar plaintiff's recovery." *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 606 (E.D. Pa. 2009). Where a party completely fails to respond to the claims against it, this factor weighs in favor of granting default against the party. *Id.* at 553. In this case, given Just Wing It's failure to respond to the claims made by Bugg and the evidence in the record, it is highly unlikely that there is a meritorious defense to the racist comments made by Behney to Bugg.

The final question is whether the defendant's delay is due to culpable conduct. *Chamberlain*, 210 F.3d at 164. In this context, "culpable conduct" means actions taken willfully or in bad faith, and such bad faith may be presumed where a defendant fails to respond to a complaint and offers no reason for its failure to engage in the action. *See Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982); *see also E. Elec. Corp. of N.J.*, 657 F. Supp. 2d at 554. Because Just Wing It has failed to enter an appearance and respond in this action, the "adversary process has been halted," and Bugg "must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *See Wilson*, 2017 WL 914260 at *4 (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689 (D.C. Cir. 1970)). Therefore, the court finds that all three *Chamberlain* factors weigh in Bugg's favor, and the court will enter default judgment against Just Wing It.

### C. Determination of damages

Prior to making a damages determination, the court must first determine whether Bugg has proven each element of his claims. Congress has enacted two statutes that establish civil rights in the context of public accommodation: Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.*, and 42 U.S.C. § 1981. Title II provides:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place

of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a(a). A "place of public accommodation" includes restaurants and other food establishments whose operations affect commerce. *Id*. An operation affects commerce where a substantial portion of the food served has moved in interstate commerce, or where the establishment offers to serve interstate travelers. *Id*. Section 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

To establish a prima facie case of discrimination under federal law, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) defendant intended to discriminate against him on that basis; and (3) defendant's racially discriminatory conduct abridged rights enumerated in Title II. *See Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 569 (3d Cir. 2002) (quoting *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)). Bugg's state law PHRA claim is analyzed under the same framework as his Title II and Section 1981 claims. *Williams v. Ramada Inn*, No. 3:2006-217, 2007 WL 2253564, at *6 (W.D. Pa. Aug. 3, 2007).

In this case, the allegations in Bugg's complaint, which are now accepted as proven due to the entry of default judgment, establish a valid cause of action under the federal and state public accommodation laws. Bugg is African American. Just Wing It is a place of public accommodation, and affects commerce within the meaning of 42 U.S.C. § 2000a.[5] Through the actions of Behney, the owner/founder of Just Wing It, Just Wing It expressly and intentionally discriminated against Bugg based on his race by twice using a racial slur and telling Bugg to "get out niggers . . . ." (Doc. 1, ¶ 18.) As a result of Behney's racist behavior, Bugg was discriminated against and felt he had no choice but to request a refund and leave the restaurant without completing his transaction or obtaining food. (*Id.* ¶¶ 22–23.) Behney's racist verbal assault on Bugg was done intentionally and purposefully, with racially discriminatory animus, for the purpose of denying equal treatment on the basis of race. Further confirming his intent, Behney stated: "I own 3 restaurants and I don't need you niggas money." (*Id.* ¶ 11.) Accordingly, Just Wing It is liable to Bugg for public accommodation discrimination pursuant to all three claims stated in the amended complaint.

---

[5] Although the complaint does not allege this fact, the court finds that the restaurant, Just Wing It, is an operation that affects commerce based on the fact that the establishment offers to serve interstate travelers. *See* 42 U.S.C. § 2000a(a). The proximity of the restaurant to Lebanon Valley College and two interstate highways (Routes 76 and 81), which the court determined by using the address of the restaurant stated in the amended complaint, Doc. 13, ¶ 3, makes it more probable than not that the restaurant offers to serve interstate travelers since a college is likely to attract out-of-state visitors and interstate highways are frequented by interstate travelers.

Because the court has concluded that Bugg has proven the required elements of his claims, the court will proceed to make a reasonable calculation of damages by examining the evidence submitted by the moving party. *See Rainey*, 354 Fed. App'x at 724; *E. Elec. Corp. of N.J.*, 652 F. Supp. 2d at 605. Bugg has not presented evidence of any out-of-pocket economic damages. Instead, he is requesting compensatory and punitive damages, as well as attorney's fees and costs. Under section 1981, Bugg is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages, as well as attorney's fees. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 460 (1975); 42 U.S.C. § 1988(b).

Bugg's counsel argued that this incident affected Bugg greatly, and that he should receive damages for emotional distress and humiliation. (Tr. at 25; Doc. 15, pp. 4–6.) The court agrees. Bugg's perspective—based on his life experience up to that point—that he was an equal, valued, and respected member of the community was cruelly destroyed in an instant, because of the unprovoked racist insults that Behney hurled at him. The court observed how deeply Bugg was affected by this verbal attack during his testimony at the evidentiary hearing on January 24, 2020, three years after the incident. The court credits Bugg's description of the lasting impact these cruel words had on his social patterns and his perspective. The court also credits the testimony of Bugg's close friend,

Gunkel, who saw tears in Bugg's eyes after Behney uttered his hateful words, and observed the ongoing hurt and humiliation suffered both by Bugg and his parents. As a result, the court has no difficulty in determining that compensatory damages for emotional distress are warranted in this case.

After reviewing the cases submitted by Bugg, the court finds that *New Corey Creek Apartments v. Pennsylvania Human Relations Commission*, 865 A.2d 277 (Pa. Commw. Ct. 2004), is the most useful comparison. In this case and in *New Corey Creek*, both defendants caused both plaintiffs embarrassment and humiliation by directing deeply offensive racist slurs at the plaintiffs, resulting in enduring emotional distress. However, in *New Corey Creek,* there were a series of insults and systemic discriminatory treatment of the plaintiff during her lease term as a tenant, and a non-renewal of her lease. In *New Corey Creek*, the plaintiff was awarded $25,000 for humiliation and embarrassment. Taking into account the fact that the award in *New Corey Creek* was made sixteen years ago, and also considering the isolated incident in this case rather than the multiple incidents and systemic discrimination in *New Corey Creek*, the court concludes that a compensatory damages award of $20,000 is warranted in this case.

In addition, counsel argued that the court should impose punitive damages, because the owner of Just Wing It "refused to serve Bugg on account of his race, and then not only refused to serve, but hurled the most hateful, awful racist slurs at

him twice in the restaurant and became very angry and heated in telling him that he's lesser than." (Tr. at 25; Doc. 15, pp. 6–7.) Counsel urged the court to "send a message that this conduct is not appropriate, that this conduct is punishable under the law." (Tr. at 26.) Once again, the court agrees. The intentional and willful act of degrading Bugg because of his race in a manner intended to humiliate and shame him is completely unacceptable behavior in our society. Although there is never a justification for using a racial slur, Behney's insults are particularly shocking because they were unprompted by any statement or action by Bugg. Behney's cruelty caused a far greater harm than merely preventing Bugg from enjoying a late-night meal at a local restaurant after a campus party; Behney's racial slurs destroyed a young man's sense of acceptance and well-being. Bugg's wound will not be healed by this judgment, but the court hopes that Behney will learn from this judgment that there was a significant harm caused by his cruelty, which will now impose a financial cost to his business.

After reviewing the cases submitted by Bugg's counsel, the court finds that *Sherman v. Kasotakis*, 314 F. Supp. 2d 843 (N.D. Iowa 2004), is the most comparable. Both cases involve a racist slur directed at African American customers at restaurants. In *Sherman*, the court affirmed a jury verdict of $12,500 in punitive damages for each plaintiff. Considering the fact that the *Sherman* verdict was rendered sixteen years ago and the specific facts of this case, the court

concludes that a one-to-one ratio between compensatory and punitive damages is appropriate. As a result, the court awards $20,000 in punitive damages.

## CONCLUSION

For the foregoing reasons, the court grants Bugg's motion for default judgment and enters judgment against Just Wing It in the amount of $40,000, which is comprised of $20,000 in compensatory damages and $20,000 in punitive damages. Interest in the amount of 6% per annum will run beginning on May 11, 2020, if the judgment is not paid to Plaintiff by that date. Counsel may file a motion for attorney's fees and costs by April 30, 2020. An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: April 6, 2020